**UNITED STATES of America**

v.

**Carlton SMITH, Defendant.**

**No. 94–CR–1260.**

United States District Court, E.D. New York.

July 20, 1995.

188

Zachary Carter, U.S. Atty., Brooklyn, NY, by Paul Gamble, for the U.S.

Robert Mauer, Garden City, NY, for defendant.

## MEMORANDUM AND ORDER

WEINSTEIN, Senior District Judge:

### INTRODUCTION

■ When sentence is to be imposed for a crime of violence, the court must permit the victim to speak. Fed.R.Crim.P. 32(c)(3)(E) (as amended Sept. 13, 1994). This sensible process helps the court gauge the effects of the defendant's crime not only on the victim but on relevant communities. It also may act as a catharsis, facilitating quicker dissipation of bitterness over the assault on the victim's dignity.

In this case a postal worker was viciously attacked while attempting to deliver mail. At the sentencing hearing he stated that his fellow postal workers were waiting to see how the court would deal with the defendant. Their interest was relevant to one of the purposes of sentencing: sending a message to both individuals and interested groups that society is concerned about their well-being and will not abandon them to unpunished criminal conduct. Such communication by the court is a proper, though not often articulated, purpose of sentencing.

### FACTS

The victim was delivering mail when the defendant demanded that he turn over a package. He explained that the package had already been delivered. Incensed, the defendant beat and stabbed the postal worker, leaving severe physical and emotional scars.

The defendant pled guilty to assault with a dangerous weapon upon a Postal Service employee during the performance of his official duties. 18 U.S.C. §§ 111(a)(1) and (b). The Guidelines called for a sentence of 33 to 41 months in prison, absent departure.

### Sentencing Proceeding

At sentencing, the victim was still deeply upset by memories of the event. He stated:

On October 28th of 1994, my life took a dramatic turn while I was working as a special delivery mailman for the U.S. Postal Service.

During the course of my duties, I encountered Mr. Smith, who was looking for a package. I told him that the package had been received by someone [who told me she was his wife] and presented me with identification.

The defendant did not believe me. After that, I encountered him again and at that time I was severely and brutally beaten and stabbed.

This experience has had a traumatic effect not only on me but on my family, my friends, and my coworkers.

Presently I'm still receiving medical attention, and I'm suffering from severe headaches, pains, and other problems.

I must tell you, Your Honor, ... to have someone who you don't know viciously and brutally kick you, punch you, and then stab you, requiring twenty-two stitches to the head, is not something that you are likely to forget.

Today there is a tremendous risk to postal employees who are going into various areas delivering mail and packages. We are being shot at, and we are being beaten and stabbed. It seems as though no one cares but our families, friends, and coworkers.

My peers are looking at the encounter that I suffered last year to see what this court will do to address this problem.

I do not expect an apology from this young man. I won't hold my breath for one. However, an apology will signify a sense of hope that there are some redeemable qualities in the defendant.

Transcript, Sentencing Hearing, June 25, 1995, at 2–4 (with minor alterations).

The mother of the defendant's six-month-old child also appeared in court, but she chose not to speak. The court informed her that it would recommend that the defendant be incarcerated in the metropolitan area so that he could maintain contact with the family. The judge stated:

I understand this [sentence] will have an adverse effect on you and the child, but I must try to send a message that we [will not] tolerate this.... We will try to keep the defendant nearby so he can see the child and [perhaps] the same thing [will not] happen to the child.

*Id.* at 11.

Defense counsel stated that the crime was out of character for this defendant.

The defendant informs me that not a single day goes by that he doesn't feel guilt and remorse. He submitted a letter to the court. It says: "I'm very sorry for Mr. C.

and for what I have put him and his family through. I wish that I could take back the pain I have caused him. I hope that he's recovered his vitality and health. I would like to apologize to Mr. C. if he would accept my apology. I am truly sorry."

*Id.* at 12. The court responded that while it had considered the needs for specific deterrence, rehabilitation, and incapacitation, the primary purposes of *this* sentence were general deterrence and the need to reassure postal workers.

█ The court takes judicial notice that delivery of mail, which often contains checks and other valuables, is hazardous in some areas of the Eastern District of New York. It is essential to residents of the District that postal workers feel safe performing their duties. *Cf., e.g.,* 18 U.S.C. § 1114 (Protection of Officers and Employees of the United States) (postal workers included in definition of official victims); *United States v. Bailey,* 961 F.2d 180, 181–83 (11th Cir.1992) (defendant who attempted to rob postal worker of money orders subject to three-level "official victim" enhancement, U.S.S.G. § 3A1.2).

## LAW

█ The statutes authorizing the Sentencing Guidelines require judges to consider "the need for the sentence imposed ... to reflect the seriousness of the offense [and] to promote respect for the law." 18 U.S.C. § 3553(a)(2). Both of these goals require consideration of the harm caused by the defendant.

### 1) Seriousness of the offense

In *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), the Supreme Court held that evidence of victim impact is relevant to the seriousness of the offense, and, therefore, to the appropriate sentence. The Court explicitly overruled two prior decisions—*South Carolina v. Gathers,* 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989), and *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987) (holding that Eighth Amendment prohibited consideration at sentencing of "personal characteristics of the victim and the emotional im-

pact of the crimes on the victim's family.") 501 U.S. at 817, 825, 111 S.Ct. at 2604, 2608. The *Payne* Court declared:

> [T]he assessment of harm caused by the defendant as a result of the crime charged has understandably been an important concern ... in determining the appropriate punishment. Thus, two equally blameworthy criminal defendants may [receive different sentences] solely because their acts cause differing amounts of harm.

*Id* at 819, 111 S.Ct. at 2605; *cf.* Norval Morris, *The Brothel Boy and Other Parables of the Law* (1992) (distinguishing between blame, which is related to the harm done or risked, and guilt, which is related to mens rea).

The Court made clear that the Guidelines continue to make "the harm caused by [the defendant's] acts" a relevant sentencing consideration. *Payne v. Tennessee,* 501 U.S. at 820, 111 S.Ct. at 2605–06. Under the Guidelines, it noted,

> "significance of harm ... is ... a measure of the seriousness of the offense and therefore ... a standard for determining the severity of the sentence that will be meted out."

*Id.* at 820, 111 S.Ct. at 2606 (quoting S. Wheeler, K. Mann, and A. Sarat, *Sitting in Judgment* 56 (1988)). It concluded:

> [T]urning the victim into a "faceless stranger at the penalty phase of a capital trial" ... deprives the State of the full moral force of its evidence and ... the jury [of] ... all the information necessary to determine the proper punishment. . . .

*Id.* at 825, 111 S.Ct. at 2608 (quoting *Gathers,* 490 U.S. at 821, 109 S.Ct. at 2216 (O'Connor, J., dissenting)).

The recent amendment to Title 18 of the United States Code regarding victim statements reflects this understanding of the need to obtain all relevant information at sentencing. *See* Public Law No. 103–322 (Sept. 13, 1994), 108 Stat. 2078, at § 230102 ("Sense of the Senate Concerning the Right of a Victim of a Violent Crime or Sexual Abuse to Speak at an Offender's Sentencing Hearing"; information presented by victim is relevant to sentence imposed under Guidelines).

## 2) Respect for the law

■ Encouraging respect for the law requires judges to consider not only the crime and the criminal, but those affected by his or her actions. This purpose goes beyond satisfying a desire for retribution, as the victim's statement in the instant case (focusing not on punishment for its own sake, but on the need to reassure coworkers) makes clear. It is closely related to the "utilitarian theories of punishment [which] have dominated American jurisprudence during most of the twentieth century." Kent Greenawalt, *Punishment,* 74 J.Criminal Law & Criminology 343, 350 (1983) (contrasting utilitarian and retributivist theories). Professor Greenawalt "catalogs [the] beneficial consequences that utilitarians have thought can be realized by punishment." *Id.* at 351. These consequences include the oft-discussed purposes of general deterrence, specific deterrence, incapacitation, and rehabilitation, *cf.* 18 U.S.C. § 3553, as well as several less-commonly mentioned goals. First of these is what Professor Greenawalt labels "norm reinforcement."

> A person's feeling of moral obligation to obey rules may depend considerably on his sense that he is treated fairly under them. If others profit with impunity from violations of the law, a law-abiding person may develop a sense of unfairness, wondering if he too should break the law.... Punishment helps assure citizens that the laws as administered deal fairly with their interests.

Greenawalt, *supra,* at 351.

Also on Professor Greenawalt's list of *utilitarian* rationales for punishment is "vengeance." He explains:

> The utilitarian, in contrast to the retributivist, does not suppose that wrongful acts intrinsically deserve a harsh response, but he recognizes that victims, their families and friends, and some members of the public will feel frustrated if no such response is forthcoming. *Satisfying these desires that punishment be imposed is seen as one legitimate aim in punishing the offender.*

*Id.* at 352 (emphasis added).

In the instant case, for the "families and friends" postulated by Professor Greenawalt,

it is necessary to substitute the community of postal employees. *Cf.* Kent Greenawalt, *Reflections on Justifications for Defining Crimes by the Category of Victim,* 1992 Annual Survey of American Law 617, 627 (hate crime statutes justified by the fact that "[s]uch crimes can frighten and humiliate other members of the [relevant] community").

■ Judges should attempt to ensure—without violating other appropriate sentencing criteria—that victims and potential victims feel their needs have been appropriately weighed on the scales of justice. Such a sentencing goal does not violate Kantian norms by sacrificing one individual to the needs of others so long as the prerequisite of guilt is established and the sentence is proportionate to mens rea and harm. These concerns are obviously satisfied in the instant case where the court could have departed upward, but chose to sentence within the prescribed Guidelines range.

## CONCLUSION

■ A sentence at the high end of the Guidelines range is appropriate as punishment and sufficient to send a message to the community of postal workers that attacks on them will be dealt with severely. The defendant is sentenced to 41 months in prison, followed by a three-year period of supervised release, and a $50 assessment. The supervised release term need not be served in this country if the defendant, an illegal alien, is deported.

SO ORDERED.